STATE OF NORTH CAROLINA v. RICARDO O'NEAL AND FRANK O'NEAL

No. 7318SC110

(Filed 28 March 1973)

1. **Larceny § 7— felonious larceny of clothing — sufficiency of evidence**

   Defendants' motion for nonsuit in a felonious larceny case was properly denied where there was substantial evidence that defendants, acting with two women, took and carried away clothing of the value of more than $200 from each of Sears, Roebuck and Company and Paul H. Rose, Incorporated, without the consent of either owner and with the intent permanently to deprive the owners thereof.

2. **Criminal Law § 84; Searches and Seizures § 2— consent to search — valid search warrant — admissibility of evidence**

   The trial court did not err in failing to grant defendants' motion to suppress evidence with respect to items found in the trunk of defendant Frank O'Neal's automobile where the evidence on *voir dire* supported the judge's findings of fact and conclusions that the search was made by and with the consent of the owner and that a valid search warrant was obtained and served on defendant before the search was made.

APPEAL by defendants from *Rouse, Judge,* 17 July 1972 Session of Superior Court held in GUILFORD County.

Defendant Ricardo O'Neal was tried upon two separate bills of indictment, proper in form, charging him with the felonious larceny of goods of the value of more than $200 belonging to Sears, Roebuck and Company, a corporation (case number 71CR77713), and with the felonious larceny of goods of the value of more than $200 belonging to Paul H. Rose, Incorporated, a corporation (case number 71CR77714). Defendant Frank O'Neal was tried upon two separate bills of indictment, proper in form, charging him with the felonious larceny of goods of the value of more than $200 belonging to Sears, Roebuck and Company, a corporation (case number 71CR77715), and with the felonious larceny of goods of the value of more than $200 belonging to Paul H. Rose, Incorporated, a corporation (case number 71CR77716). The defendants pleaded not guilty, and the cases were consolidated for trial without objection.

The evidence for the State tended to show the following: Witness Wanda Atwater testified that "[b]ack in November and October, 1971, I had a drug habit." On 28 November 1971, she and Bernice Miller, Ricardo O'Neal and Frank O'Neal got

together in Winston-Salem, North Carolina, and drove to Greensboro, North Carolina, for the purpose of shoplifting goods, for which she was to receive from Frank O'Neal one-third of the retail value of the goods stolen. The two defendants and Mrs. Miller and Miss Atwater drove to the downtown Sears, Roebuck and Company store in Greensboro. Miss Atwater and defendant Ricardo O'Neal entered the store and picked out a man's suit, placed it under Miss Atwater's dress, and removed the suit from the store without paying for it. Thereafter, Miss Atwater placed a man's suede coat under her dress, and she and Ricardo O'Neal removed the suede coat from the store without paying for it.

Bernice Malloy Miller testified for the State that "[i]n October and November, 1971, I had a drug habit." On 28 November 1971, Bernice Miller, Wanda Atwater, and Ricardo O'Neal traveled with Frank O'Neal in his car to Greensboro for the purpose of shoplifting. At the Sears, Roebuck and Company store, Mrs. Miller and Frank O'Neal looked at men's suits, and while there they removed two suits and a pair of pants from hangers and placed them in Mrs. Miller's pocketbook without paying for them. Mrs. Miller carried the first suit out to the car and placed it in a pillowcase on the front seat of the car, and then returned to the store and removed the pants and second suit to the car, placing them in the same pillowcase. Both couples then drove to the Paul Rose Store in Greensboro. Sometime after 1:30 p.m. on 28 November 1971, Mr. Joe Decker, the general manager of the Paul Rose Store, located in the Friendly Shopping Center, observed the defendants, accompanied by the two women, Bernice Miller and Wanda Atwater, enter the Paul Rose Store. Upon entering the store, Bernice Miller and Frank O'Neal went in one direction and Wanda Atwater and Ricardo O'Neal went in another direction. The defendants and their companions remained in the Paul Rose Store approximately 35 to 45 minutes. Bernice Miller testified that while she was in the store, she and Frank O'Neal picked out two men's suits and a woman's three piece suit, which Mrs. Miller identified as State's Exhibit Number 1, placed the suits in her pocketbook without paying for them, and took them out of the Paul Rose Store to Frank O'Neal's car. While at the car, Mrs. Miller observed a man standing at the door of Paul Rose Store looking at her, whereupon she threw the woman's suit, State's Exhibit Number 1, underneath an adjoining car. Mr. Joe Decker testified that after he observed Bernice Miller

throw State's Exhibit Number 1 underneath a nearby car, he saw the defendants and their female companions climb into a Ford "LTD" automobile and drive away. Decker noted the license number of their car and telephoned the Greensboro Police Department for assistance. Decker further testified that State's exhibits numbered 1 through 5, consisting of various pieces of clothing, were the property of Paul H. Rose, Incorporated, and had a retail value of between $800 and $900. On cross-examination, Decker testified that for the purpose of keeping records of their inventory, the Paul Rose Store attached labels to all their garments, and that it was customary at the time of sale for part of the tag to be torn off and kept by store personnel. However, Decker admitted that " . . . it is human error sometimes for my cashiers not to tear the ticket off when it's sold. . . . I never at any time saw these two defendants with those suits in their personal possession in and around the store. . . . I have no way of knowing how these garments got out of the Paul Rose Store. . . . "

Mr. Barry Marshall, the manager of the men's suit department at the Sears, Roebuck and Company store in Greensboro testified that he was familiar with the inventory and accounting method used by the Sears store in November, 1971, and that State's exhibits numbered 6 through 12 were various articles of clothing offered for sale by Sears, Roebuck and Company, having an aggregate retail value of some $380. On cross-examination, however, Mr. Marshall testified that he could not identify State's exhibits numbered 6 through 12 as having come from the men's department of the Sears, Roebuck and Company store in Greensboro.

The State's evidence further tended to show that Sergeant R. D. Pegram of the Greensboro Police Department was following Frank O'Neal's Ford automobile in a police car when Sergeant Pegram received a radio transmission describing the O'Neal vehicle; that Sergeant Pegram stopped the O'Neal vehicle, and that shortly thereafter Detective J. D. Zimmerman arrived at the scene; that Zimmerman informed Frank O'Neal of his constitutional rights, but that O'Neal made no statement at that time; that while Zimmerman was talking with O'Neal, Bernice Miller came up to Zimmerman and said "that she took the item," that "it was in a pillowcase up in the car," and that "she went up and pulled out a pink pillowcase full of various garments and brought them to me"; that the defendants and

the two women were asked to go to the police station with the officers; that a search warrant was procured to search Frank O'Neal's vehicle; that as a result of that search, State's exhibits numbered 6 through 12 were recovered from the trunk of Frank O'Neal's Ford car; and that State's exhibits numbered 1 through 5 were the same articles of clothing as were found in the pink pillowcase voluntarily given to Detective Zimmerman by Bernice Miller after the O'Neal car had been stopped.

Defendants offered no evidence. After the close of the State's evidence, the defendants moved for judgments as of nonsuit. The motion was denied. The jury returned verdicts of guilty of felonious larceny on both indictments against each defendant. Cases numbered 71CR77713 and 71CR77714 were consolidated for judgment and defendant Ricardo O'Neal was sentenced to three years in the custody of the Commissioner of Correction as a "committed youthful offender," G.S. 148-49.1, et seq. In case number 71CR77715, judgment was rendered that defendant Frank O'Neal be imprisoned for two to three years in the State Department of Correction, and in case number 71CR77716 judgment was rendered that defendant Frank O'Neal be imprisoned for two to three years in the State Department of Correction, this sentence to run consecutively with the sentence in case number 71CR77715. Defendants appealed, assigning error.

*Attorney General Morgan, by Assistant Attorney General Icenhour, for the State.*

*Lee, High, Taylor and Dansby, by Herman L. Taylor, and Samuel S. Mitchell, for defendant appellants.*

MORRIS, Judge.

[1] Defendants assign as error the failure of the trial court to grant their motion for judgment of nonsuit. This assignment of error presents the question whether there is substantial evidence, when viewed in the light most favorable to the State, of each essential element of the crime charged, and whether there is substantial evidence that the defendants are the perpetrators of the crime charged. *State v. Hoffman,* 281 N.C. 727, 190 S.E. 2d 842 (1972); *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971).

The record in this case contains substantial evidence that defendants, acting with Bernice Miller and Wanda Atwater,

took and carried away clothing of the value of more than $200 from each of Sears, Roebuck and Company and Paul H. Rose, Incorporated, without the consent of either owner and with the intent permanently to deprive the owners thereof. This assignment of error is overruled.

[2] By defendants' only other assignment they contend that the court erred in failing to grant their motion to suppress evidence with respect to items found in the trunk of the automobile owned by Frank O'Neal. Upon defendants' objection, the court conducted a voir dire hearing. Two witnesses for the State and defendant Frank O'Neal testified on voir dire. The court made the following findings of fact:

"1. After being stopped by officers, the defendants were directed to go to the police station in Greensboro.

2. The defendant, Frank O'Neal, advised the officers that the Ltd Ford automobile in question was his.

3. Mr. Frank O'Neal stated to Officer Zimmerman, of the Greensboro Police Department, that he had no objection to a search of his automobile, but further advised him that he didn't have a key.

4. This conversation took place at the police station and constituted a consent by the defendant, Frank O'Neal, that his automobile should be searched.

5. A search warrant was obtained and served upon the defendant prior to the time that the Ltd automobile was searched.

6. The search warrant appears in the record, together with the affidavit supporting the search warrant, as State's Exhibits 16 and 17.

7. Said search warrant and affidavit were valid and sufficient in law to authorize a search of the automobile, that is the 1970 Ltd Ford owned by the defendant, Frank O'Neal.

8. That pursuant to said search warrant, a search was made of the trunk of the 1970 Ltd Ford automobile, and the items identified as State's Exhibits through 12, inclusive, by the State were found in the trunk, as well as other items which have been testified by the State."

And the following conclusions of law:

"1. The search of the trunk of the Ltd Ford automobile owned by Frank O'Neal was by and with the consent of the owner and was, therefore, for that reason lawful.

2. That it is further lawful for the reason that a valid search warrant had been obtained and served on the defendant, Frank O'Neal, prior to the time that a search was made of the trunk of the Ltd Ford Automobile owned by the defendant, Frank O'Neal.

3. The items found in the trunk of the automobile pursuant to the search are admissible in evidence in this case."

The court heard the evidence on voir dire of both the State and defendants. In the light of the evidence and its observation of the demeanor of the witnesses, the court resolved the question in favor of the State. The findings of fact, if supported by competent evidence in the record, are conclusive and no reviewing court may set them aside or modify them. *State v. Pike*, 273 N.C. 102, 159 S.E. 2d 334 (1968). Here the facts found were supported by competent evidence in the record and supported the conclusions of law. The evidence was properly admitted.

No error.

Judges HEDRICK and VAUGHN concur.